IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

MARILYN M. JONES,               *
                                *
     Plaintiff,                 *
                                *
vs.                             *   CIVIL ACTION 10-00479-B
                                *
MICHAEL J. ASTRUE, Commissioner *
of Social Security,             *
                                *
     Defendant.                 *

## ORDER

Plaintiff Marilyn M. Jones ("Plaintiff") brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq. On June 22, 2011, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 17). Thus, this case was referred to the undersigned to conduct all proceedings through entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (Doc. 19). Oral argument was waived. Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED.**

I.   **Procedural History**

Plaintiff protectively filed an application for supplemental security income on February 7, 2007. (Tr. 79-81). Plaintiff alleges that she has been disabled since June 1, 2005, due to diabetes and hypertension. (Tr. 79, 91). Her application was denied at the initial stage (Tr. 48-52), and she filed a timely Request for Hearing before an Administrative Law Judge ("ALJ"). (Tr. 53). On October 24, 2008, Administrative Law Judge Alan E. Michel held an administrative hearing, which was attended by Plaintiff and her attorney. (Tr. 22-45). On November 13, 2008, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled. (Id. at 15-21). Plaintiff's request for review was denied by the Appeals Council ("AC") on August 18, 2010. (Id. at 1-4, 9-11).

The parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

II.  **Issues on Appeal**

> A.   Whether the ALJ erred by failing to seek the testimony of a vocational expert in light of his finding that Plaintiff can only perform a restricted range of sedentary work.
>
> B.   Whether the ALJ erred by failing to consider Plaintiff's obesity as a severe impairment.

   C. Whether the ALJ erred by failing to order a
     consultative neurological examination considering
     Plaintiff's diagnosis of diabetic neuropathy.

## III. **Factual Background**

   Plaintiff was born on July 15, 1961, and was 47 years old at the time of the administrative hearing. (Tr. 30, 47 86). She has a 12th grade education and completed 2 years of college. (Id. at 30). Plaintiff has worked in the past as a nurse's assistant and a cafeteria worker. (Id. at 92. 100, 138). Plaintiff reported that she stopped working due to lower back pain. Plaintiff also reported that her feet swells if she stands or walks too long, that her vision gets blurry, and that she has muscle spasms in her chest due to acid reflux. (Id. at 37-39, 91).

   Plaintiff testified that she is able to care for her personal needs; however, it takes her a long time to complete some activities such as combing her hair, getting dressed, cooking, etc. (Id. at 34, 114). According to Plaintiff, she can lift 20 pounds and is able to perform some housework, but she has to stop frequently due to fatigue. (Id. at 42). Plaintiff also indicated that her daughter assists her with cooking and the laundry. (Id. at 42). At the time Plaintiff completed her application, she indicated that she was caring for her mother, including bathing her and preparing her food. Plaintiff also indicated that while assisting her mother, her legs and feet

would hurt. Plaintiff testified that she has never driven an automobile and that she utilizes public transportation. (Id. at 110-114).

Plaintiff indicated that she takes 12 to 14 medicines[1], however, she is not able to afford these medications on a consistent basis. According to Plaintiff, she experiences side effects from her medications that make her drowsy, sleepy, and woozy, and causes her eyes to blur. ((Id. at 33-34, 42).

## IV.   Analysis

### A.    Standard Of Review

In reviewing claims brought under the Act, this Court's role is a limited one.   The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.   Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).[2]   A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that

---

[1]  Plaintiff's medications referenced in the record include Actos, Avalide, Bayer Aspirin, Furosemide, Gabapentin, Isosorbide DN, Klor-Con, Lantus Insulin, Metformin, Metoclopramid, Nitroglycerin, Quinapril, Ranitidine, Simvastatin, Zantac, and Prevacid. (Id. at 95-96, 115, 137, 140).

[2]This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

of the Commissioner.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).  The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence.  Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion[]").  In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision.  Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163 (S.D. Ala. 1999).

**B.   Discussion**

An individual who applies for Social Security disability benefits must prove his disability.  20 C.F.R. §§ 404.1512, 416.912.  Disability is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 404.1505(a), 416.905(a).  The Social Security regulations provide a five-step sequential evaluation

process for determining if a claimant has proven her disability. 20 C.F.R. §§ 404.1520, 416.920.[3]

In the case sub judice, the ALJ determined that Plaintiff has not engaged in substantial gainful activity and that she has the severe impairments of diabetes, blurred vision, hypertension, lower back pain, and acid reflux. (Tr. 17-18). The ALJ found that Plaintiff does not have an impairment that meets

---

[3]The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; (4) the claimant's age, education and work history. Id. at 1005. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

or medically equals any of the listings  contained in 20 C.F.R. Pt. 404, Subpt. P, App. 1, Regulations No. 4. (Id. at 18).

The ALJ concluded that Plaintiff retains the residual functional capacity (hereinafter "RFC") to perform a restricted range of sedentary work, that Plaintiff can stand/ walk occasionally and lift/ carry 10 pounds occasionally. (Id. at 18).   The ALJ next determined that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms but that her statements concerning the intensity, persistence and limiting effects of the alleged symptoms are not credible to the extent they are inconsistent with the RFC assessment. (Id. at 19). The ALJ concluded that Plaintiff has no past relevant work and that, considering Plaintiff's RFC and vocational factors, such as age, education and work experience, Plaintiff is able to perform other jobs existing in significant numbers in the national economy. (Id. at 20-21). Thus, the ALJ concluded that Plaintiff is not disabled. (Id. at 21).

The relevant evidence of record reflects that Plaintiff was treated by Ollie Powe, III, D.O. (hereinafter "Dr. Powe"), optometrist, on April 24, 2006. (Id. at 147, 259-61, 334). In a questionnaire dated September 19, 2008, Dr. Powe found that

Plaintiff has myopia[4] and presbyopia[5]. (Id. at 334). On examination, he noted that Plaintiff's visual acuity was 20/20 bilaterally when best corrected. (Id. at 260). In October 2008, Plaintiff reported that she was using two eyes drops prescribed by Dr. Powe. (Id. at 142).

Plaintiff was seen by Jean A. Sansaricq, M.D. (hereinafter "Dr. Sansaricq"), from at least March 9, 2004 to May 19, 2006, with complaints regarding abdominal pain and hot flashes. (Tr. 148-157). The records reflect that she underwent a hysterectomy on March 9, 2004. (Id. at 150-53).

Plaintiff was treated in the emergency department at Mobile Infirmary on May 27, 2006. She reported abdominal pain, nausea, and vomiting. The notes reflect that an x-ray of her abdomen was normal, and no evidence of bowel obstruction was seen. (Id. at 165). The treating physician noted a history of diabetes, hypertension, and a family history of cardiac problems. Plaintiff was discharged in stable condition and given Demerol and Phenergan. (Id. at 158-165).

---

[4] Myopia is more commonly called nearsightedness. See www.ncbi.nlm.nih.gov (last visited March 27, 2012).

[5] Presbyopia is a condition in which the lens of the eye loses its ability to focus, making it difficult to see objects up close. See www.ncbi.nlm.nih.gov (last visited March 27, 2012).

Plaintiff was treated as an inpatient at Mobile Infirmary from July 3 to July 6, 2006. She reported chest pain, numbness in her arm, nausea, and dizziness. (Id. at 166-81). The record reflects that Plaintiff's primary care physician sent her to the emergency department due to low blood pressure, and she was subsequently admitted. A history of hypertension, gastroesophageal reflux disease (GERD), and diabetes was noted, as was a family history of coronary artery disease. Cardiac enzymes were negative, and a left heart catherization was normal. An ultrasound on Plaintiff's abdomen revealed the gallbladder and common hepatic duct were normal, the kidneys were normal in size and shape, and the spleen, abdominal aorta, and IVA were unremarkable. An x-ray of the heart found no change from a prior one, that the heart and mediastinum were normal, and that the lungs were clear of infiltrates, effusions, and masses. (Id. at 179-180). Plaintiff was discharged in stable condition and directed to follow up with her primary care doctor. (Id. at 169).

Plaintiff was also treated at Franklin Primary Health Center/ Franklin Medical Center from at least April 21, 1999 through at least March 18, 2009 for a number of aliments.[6] (Id.

---

[6] In 2005, Plaintiff presented for treatment on February 16 and 18, April 27, and August 9. (Tr. 201-210). In 2006, Plaintiff sought treatment on April 14 and 25, May 15, June 12, (Continued)

at 182-258, 319-330). On February 18, 2005, Plaintiff reported sharp pains in her lower back, the cause of which she attributed to lifting her mother. Plaintiff also rated her pain as a 10 on a scale of 1 to 10. She further reported acid reflux at night and nausea. Plaintiff was directed to take Prevacid for the acid reflux and prescribed hydrocodone for the lower back pain. (Id. at 205-07). On September 22, 2006, Plaintiff reported again that her lower back pain rated a 10 on a scale of 1 to 10. She was prescribed hydrocodone for the pain. (Id. at 186-7). The records also reflect that Plaintiff's diabetes fluctuated between controlled and uncontrolled during the period she was treated at Franklin. See, e.g., (Id. at 184, 190, 196, 320, 358). Additionally, during her treatment at Franklin, Plaintiff also reported shoulder pain, nausea, hand and foot cramps, dyspepsia, dizziness, and edema in her lower extremities. (Id. at 182-258, 319, 330). Neuropathy was also noted and Plaintiff she was advised to lose weight and exercise. (Id. at 189-90, 195-6, 333, 353-4).

---

July 10, August 7, September 22, and October 20. (Id. at 185-200). In 2007, Plaintiff sought treatment on January 24 and August 30. (Id. at 183-84, 327). In 2008, Plaintiff was seen on at least February 11, March 24, June 3, June 17, September 9, and October 7. (Id. at 332-333, 353-356, 265-66). In 2009, Plaintiff presented on January 22, February 3, March 12, March 18, May 1, May 29, August 10, and October 1. (Id. at 335-339, 351-52, 355-364).

On April 19, 2007, L.D. McLaughlin, M.D. (hereinafter "Dr. McLaughlin"), interviewed and examined Plaintiff at the Agency's request. (Id. at 262-267). Dr. McLaughlin noted Plaintiff's history of hypertension, diabetes, and hyperlipidemia (high blood cholesterol and triglycerides). Plaintiff reported that she had poorly controlled diabetes, that she worked as a nurse's aid until 2004 and has not worked since, that she was able to walk 2 blocks, and that she had some generalized soreness in her abdomen, neck, and back. On physical exam, Dr. McLaughlin noted no acute distress and observed that Plaintiff was only able to flex her back over approximately 20 degrees from vertical due to pain up and down the paravertebral muscles. Dr. McLaughlin also observed that Plaintiff could rotate her back only 5 degrees each way. Dr. McLaughlin further observed that Plaintiff's bowel sounds appeared within normal limits and that she had moderate tenderness over the epigastric area and left upper quadrant area of her abdomen on palpation. Plaintiff denied any GI or GU symptoms. Plaintiff's upper extremities showed good range of motion. No major pain or tenderness below the shoulders was noted; however, there was some tenderness in her lower extremities. Dr. McLaughlin opined Plaintiff's lower extremities otherwise appeared satisfactory, and no pedal edema was noted. Plaintiff's visual acuity in the right eye was 20/20, 20/30 in the left eye, and 20/30 bilaterally. Dr. McLaughlin reported he

did "not see any definitive diabetic complications" but did note that Plaintiff was taking Neurontin[7], which could have been prescribed for diabetic neuropathy.   Dr. McLaughlin observed that Plaintiff's gait was normal, and that she was able to stand on heels and toes, walk, squat, and rise without difficulty or assistance. Dr. McLaughlin opined that Plaintiff could do some work related activities which do not involve prolonged walking, lifting or carrying objects. He also opined that Plaintiff would have some difficulty with prolonged standing. (Id. at 265).

Agency medical consultant Kimberly White completed a physical RFC assessment on April 27, 2007. (Id. at 269-276). She assessed Plaintiff with diabetes, hypertension, and generalized myalgia. Ms. White opined that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday, and push and/or pull for an unlimited amount of time. She further reported that Plaintiff could occasionally climb, stoop, kneel, crouch, and crawl, but could never balance. Additionally, she opined that Plaintiff had no limitations in manipulative, visual, or communicative ranges, but should avoid

---

[7]   Neurontin is used to treat nerve pain. See http://www.drugs.com/neurontin.html (last visited March 27, 2012).

concentrated exposure to extreme cold, extreme heat, and humidity. (Id. at 269-76).

The record includes treatment notes from USA Medical Center, dated December 1, 2003, April 4, 2005, and May 11, 2007. (Tr. 277-316). On December 1, 2003, Plaintiff presented with flu-like symptoms. She was diagnosed with bibasilar atelectasis[8] and was prescribed Phenergen and azithromycin. (Id. at 307-16).

Plaintiff was treated on April 4, 2005, with complaints of temporal throbbing pain which Plaintiff rated as 8 on a pain scale of 1 to 10, light-headedness, and nausea, which were relieved with rest. Trace pretibial edema, slight abdominal distention, and elevated blood pressure were noted. An x-ray taken that date showed the lungs were clear, the soft tissues and bony structures were normal, and the heart size and configuration, mediastinum, and pulmonary vessels were within normal limits. Plaintiff was directed to follow up with Dr. Uzoije. (Id. at 292-304, 306).

On the May 11, 2007, Plaintiff reported abdominal and pelvic pain lasting 2 weeks. A CT scan of her pelvis revealed that her lung bases were clear, and the liver, spleen,

---

[8] Bibasilar atelectasis is a condition where air pockets contained in the lungs collapse, interrupting breathing. See www.freemd.com/bibasilar-atelectasis/overview.htm (last visited March 27, 2012).

gallbladder, pancreas, and bilateral adrenal glands were within normal limits. Plaintiff's right kidney was normal, but a small, subcentimeter cyst in the mid pole of left kidney was observed. The small bowel and colon were unremarkable, but multiple phleboliths in the pelvis were seen. Lumbar degenerative joint and disc disease were noted, and Plaintiff was diagnosed with pelvic inflammatory disease. (Id. at 277-91, 305).

The record also contains treatment notes from gastroenterologist Raymond Bell, M.D. (hereinafter "Dr. Bell"), from January 12, 2002 to March 10, 2009. (Id. at 340-50). On March 17, 2005, Dr. Bell performed an EGD (esophagogastroduodenoscopy) with dilation due to Plaintiff's complaints of dysphagia and mid epigastric discomfort and opined that Plaintiff has probable esophagitis with esophageal spasm. No evidence of Barrett's Esophagus[9] was observed, however mild gastritis and duodenitis were noted. (Id. at 344). Plaintiff was most recently seen by Dr. Bell on March 10, 2009, and his diagnostic impression was gastritis and esophagitis. (Id. at 341).

---

[9] Barrett's esophagus is a disorder in which the lining of the esophagus (the tube that carries food from the throat to the stomach) is damaged by stomach acid. See http://www.ncbi.nlm.nih.gov (last visited March 27, 2012).

> **1.  Whether the ALJ erred by failing to seek the testimony of a vocational expert in light of his finding that Plaintiff can only perform a restricted range of sedentary work.**

Plaintiff argues that the ALJ erred in failing to obtain vocational expert (hereinafter "VE") testimony considering his finding that Plaintiff retained the RFC to perform a restricted range of sedentary work[10]. According to Plaintiff, the ALJ improperly relied on the Medical-Vocational Guidelines, or the Grids, in making his determination and should have called on a VE to determine how and to what extent Plaintiff's occupational base was eroded by her limitations.

In opposition, Defendant argues that the ALJ considered the entire record and properly determined that Plaintiff's additional limitations had little to no effect on the occupational base of unskilled sedentary work. Further, Defendant notes that the isolated impairments do not preclude use of the Grids. Additionally, Defendant contends that assuming arguendo that the ALJ should have elicited testimony from a VE,

---

[10] Sedentary work involves lifting no more than 10 pounds at a time, with occasional lifting or carrying of articles such as docket files, ledgers or small tools, and occasional walking or standing. 20 C.F.R. § 416.967(a). Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. SSR 96-9p, 1996 SSR LEXIS 6.

any error was harmless as Plaintiff has not shown she was prejudiced by the ALJ's analysis.

At step five of the sequential analysis, the burden of proof shifts to the Commissioner to establish that Plaintiff could perform other work that exists in the national economy. Phillips v. Barnhart, 357 F.3d 1232, 1237-39 (11th Cir. 2004); Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995). In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a plaintiff and consider the plaintiff's RFC, age, education, and work experience. See Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). RFC is what the claimant is still able to do despite her impairments. 20 C.F.R. § 416.945(a)(1).

To do this, the ALJ can either exclusively rely on the grids when each variable on the appropriate grid accurately describes the plaintiff's situation or call a VE. See Phillips, 357 F.3d at 1329-40. However, exclusive reliance on the grids is only appropriate when the plaintiff is able to perform a full range of work at a given functional level or when a plaintiff has nonexertional impairments that do not significantly limit basic work skills. Phillips, 357 F.3d at 1243; Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Walker v. Bowen, 826 F.2d 996, 1003

(11th Cir. 1987) ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation."). Stated differently, an ALJ can utilize the grids to meet this burden if a claimant primarily suffers from exertional impairments[11] with no significant non-exertional limitations. See Allen, 880 F.2d at 1201-02.

The Eleventh Circuit has defined the "full range of work" as "being able to do 'unlimited' types of work at the given exertional level." Phillips, 357 F.3d at 1242. Where the ALJ determines that the claimant cannot perform the full range or unlimited types of work at the given functional level, the ALJ must consult a VE to ascertain whether there are sufficient jobs in the national economy at that functional level given the claimant's exertional limitations. Phillips, 357 F.3d at 1242.

In this case, the record reflects that while the ALJ stated that Plaintiff has the RFC to perform a restricted range of

_____

[11] An "exertional impairment" for social security disability purposes is an impairment which places limits on an individual's ability to meet job strength requirements. Foote, 67 F.3d at 1559; Phillips, 357 F.3d at 1241 n.11 (noting the seven strength demands of the job: sitting, standing, walking, lifting, carrying, pushing, and pulling). Nonexertional limitations affect an individual's ability to meet other work-related demands, and include pain, side effects from medications, colon discomfort, mental impairments, tolerating environmental working conditions, hearing or speaking, and the inability to walk without an assistive device. See, e.g., Phillips, 357 F.3d at 1241; Watson v. Astrue, 376 Fed. Appx. 953, 957 n.7 (11th Cir. 2010).

sedentary work, he went on to clarify that Plaintiff can stand/walk occasionally, and that she can lift/carry ten pounds occasionally.  Under the regulations, sedentary work involves lifting no more than 10 pounds occasionally, and occasionally lifting or carrying articles like docket files, ledgers and tools.  Additionally, the regulations provide that being on one's feet is required "occasionally" at the sedentary level. See 20 C.F.R. § 416.967(a) ("Sedentary work involves lifting no more than 10 pounds at a time.... Jobs are sedentary if walking and standing are required occasionally.").  According to the regulations, "'[o]ccasionally'" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 SSR LEXIS 30.

The undersigned finds that while the ALJ's decision is not the model of clarity, the ALJ specifically found that Plaintiff can engage in occasional lifting/carrying of ten pounds, and that she is capable of occasionally walking/standing.  In so finding, the ALJ implicitly found that Plaintiff can engage in a full range of sedentary work because Plaintiff's functional

strengths are consistent with a full range of sedentary work[12].
This is particularly true where Plaintiff has not argued that
the ALJ erred in finding that she can lift/carry ten pounds
occasionally and that she can walk/stand occasionally, and has
not pointed to any non-exertional limitations that would
restrict the range of sedentary work that she is able to
perform. Indeed, as noted supra, upon examining Plaintiff in
April 2007, L.D. McLaughlin, M.D. opined that Plaintiff can
engage in work activities that do not involve prolonged walking,
standing, lifting or carrying objects. (Id. at 265). The
physical functional limitations, as found by the ALJ, are
consistent with Dr. McLaughlin's opinions, and do not preclude
the full range of sedentary work. In view of the substantial
record evidence demonstrating that Plaintiff can perform the
full range of sedentary work, the ALJ's statement that Plaintiff
has the RFC to perform a restricted range of sedentary work
constitutes harmless error.  Accordingly, the Court concludes

---

[12] Plaintiff reliance on Gibson v. Heckler, 762 F.2d 1516
(11th Cir. 1985)(per curiam), is misplaced.  In Gibson, the
Court held that the Grids should not have been applied where the
ALJ found claimant could perform sedentary or light work with a
sit/stand limitation because the RFC variable of the Grids does
not take into account a sit/stand limitation. However, a
sit/stand option is not applicable to this case, thus making it
easily distinguishable from Gibson.  Plus, the record does not
contain any evidence that suggests that Plaintiff has any
limitations that would preclude her from performing a full range
of sedentary work.

that the ALJ did not err in applying the Grids, instead of using a VE, as Plaintiff does not have any limitations that significantly diminish her ability to perform a wide range of sedentary work.

> **2.   Whether the ALJ erred by failing to consider Plaintiff's obesity as a severe impairment.**

In her brief, Plaintiff asserts that the ALJ erred in failing to find Plaintiff's obesity is a severe impairment and in failing to discuss Plaintiff's obesity under SSR 02-1p[13]. The

---

[13] SSR 02-1p, 2002 SSR Lexis 1 reads in pertinent part:

> [W]e will not make assumptions about the severity or functional effects of obesity combined with other impairments.
>
> ....
>
> Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment.... An assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment.... As explained in SSR 96-8p, 1996 SSR LEXIS 5 ... our RFC assessments must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis....
>
> ....
>
> The combined effects of obesity with other impairments may be greater than might be expected without obesity....

(Continued)

Commissioner responds that the ALJ was not required to develop Plaintiff's obesity claim because she never alleged obesity as a disabling impairment in her application or at the administrative hearing, nor did she present any evidence of disabling limitations cause by her weight.

A review of the record shows that Plaintiff's weight was recorded between approximately 165-208 pounds during the relevant period. (Tr. 183-205, 319-332). She testified at the administrative hearing that her current weight was 195 pounds and that she stands 5'2" tall (Id. at 32).

It is well settled that a plaintiff bears the ultimate burden of establishing disability. Russell v. Astrue, 331 Fed. Appx. 678, 679 (11th Cir. 2009); Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991); Brady v. Heckler, 724 F.2d 914, 918

---

> ....
>
> As with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental limitations.
>
> ....
>
> When we identify obesity as a medically determinable impairment ..., we will consider any functional limitations resulting from the obesity in the RFC assessment, in addition to any limitations resulting from any other physical or mental impairments we identify.

(11th Cir. 1984). In addition, the plaintiff must provide corroborative medical or other evidence of his impairments in the record. Carnes, 936 F.2d at 1218; Bell v. Bowen, 796 F.2d 1350, 1353 (11th Cir. 1986); 42 U.S.C. § 423(d)(5); 20 C.F.R. §§ 404.704, 404.1512(c). While it is true that the ALJ did not discuss Plaintiff's obesity in his decision, the record reveals that Plaintiff did not allege obesity as a grounds for disability, either in the initial application for SSI benefits (Tr. 79-81) or during the hearing before the ALJ (Id. at 22-45).

Further, Plaintiff alleges no facts and points to no evidence in the record in support of her position that her obesity impinges on her ability to work. In the present case, Plaintiff's treatment notes and medical diagnoses do not indicate that Plaintiff suffers any limitations due to her obesity or that her obesity exacerbates her other impairments. In fact, the administrative record is largely devoid of references to Plaintiff's obesity and the notations which do appear reference Plaintiff's obesity in passing. See, e.g., (id. at 213, 234, 350). Additionally, none of Plaintiff's physicians identified any functional limitations resulting from her obesity.[14]

---

[14] At most, healthcare providers at Franklin Primary Health directed Plaintiff to diet and exercise. (Tr. 355-8). The Eleventh Circuit Court of Appeals held that "[a] physician's (Continued)

In this case, Plaintiff did not allege or testify that her obesity was disabling or caused her any limitations, and nothing in the record suggests such a conclusion. As indicated above, the burden is on the plaintiff to demonstrate that the Commissioner's decision is not supported by substantial evidence, and the argument of counsel is insufficient to meet this burden, as is Plaintiff's administrative hearing testimony. Given the lack of record evidence, there was nothing before the ALJ to demonstrate or even suggest that Plaintiff's obesity significantly limits her ability to work, either medially or mentally, as required under SSR 02-01p, 2002 SSR LEXIS 1. See Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005) (finding that the ALJ did not err in failing to find Plaintiff's obesity as a severe impairment where "[t]he medical record is silent as to whether and how claimant's obesity might have exacerbated her condition. Moreover, claimant did not present any testimony or other evidence at her hearing that her obesity impaired her ability to work"); Fincher v. Astrue, 2010 U.S. Dist. LEXIS

_____

recommendation to lose weight does not necessarily constitute a prescribed course of treatment, nor does a claimant's failure to accomplish the recommended change constitute a refusal to undertake such treatment." McCall v. Bowen, 846 F.2d 1317, 1319 (11th Cir. 1988) (citing Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986) (noting that "it is impermissible . . . to presume that obesity can be remedied.")).

17818, *10-11 (S.D. Ga. Mar. 1, 2010)(requiring evidence of obesity's effect on claimant's ability to work in order to support reversal).

The ALJ considered the limitations mentioned in Plaintiff's medical records in reaching his decision. Accordingly, upon consideration of the record in this case, the undersigned concludes that the ALJ did not err in failing to consider the effect of Plaintiff's obesity on the severity of her other impairments or on her RFC. Cf. Street v. Barnhart, 133 Fed. Appx. 621, 627-28 (11th Cir. 2005) (noting that an ALJ need not consider impairments when the claimant fails to put the ALJ on notice of their existence and that an ALJ is under no obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability); Warren v. Astrue, 2010 U.S. Dist. LEXIS 85836, *24 (N.D. Ga. July 14, 2010) (same).

### 3. Whether the ALJ erred by failing to order a consultative neurological examination considering Plaintiff's diagnosis of diabetic neuropathy.

Plaintiff next argues that the ALJ erred by failing to order a consultative neurological exam to determine the severity of her diabetic neuropathy. Specifically, Plaintiff maintains this request was made in writing (see Tr. 132), and contends that it was error not to grant this request to aid in

determining Plaintiff's RFC. The Commissioner responds that the ALJ considered the medical opinions in the record and is permitted to issue a decision without obtaining additional evidence so long as other record evidence provided a sufficient basis for the decision or where additional testing results would have been of limited relevance to the inquiry during the period at issue.

"Even though Social Security courts are inquisitorial, not adversarial, in nature, claimants must establish that they are eligible for benefits. The administrative law judge has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision." Ingram v. Comm. of Soc. Sec. Admin., 496 F.3d 1253, 1269 (11th Cir. 2007); see also Good v. Astrue, 240 Fed. App'x 399, 404 (11th Cir. 2007) (rejecting claim that ALJ reversibly erred in failing to order a consultative examination because no treating or examining physician had recommended such an examination and the record contained sufficient evidence to permit the ALJ's RFC determination); 20 C.F.R. § 416.919a(b) (detailing situations requiring a consultative examination for SSI claimants). Accordingly, the ALJ must probe into all relevant facts, even where a claimant is represented by counsel. Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981). The ALJ

should have the claimant attend a consultative examination or order tests when the necessary information cannot be gleaned from the records but should only purchase tests or examinations that are "need[ed] to make a determination" about a plaintiff's disability. 20 C.F.R. §§ 416.912(f), 416.917, 416.919(f).

Additionally, there is no requirement that whenever an ALJ is made aware of a plaintiff's condition that a consultative examination is automatically required. Rather, it is only where a consultative examination is necessary for the ALJ to make a decision due to some conflict, ambiguity, or other insufficiency in the medical evidence that the regulations require an ALJ to order a consultative examination. 20 C.F.R. §§ 404.1519(a)(2) ("When we purchase a consultative examination, we will use the report from the consultative examination to try to resolve a conflict or ambiguity if one exists. We will also use a consultative examination to secure needed medical evidence the file does not contain such as clinical findings, laboratory tests, a diagnosis or prognosis necessary for decision."), 404.1519a(b) ("A consultative examination may be purchased when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on your claim."); see also Hawkins v. Chater, 113 F.3d 1162, 1166 (10th Cir. 1997) ("The Secretary has broad latitude in ordering consultative examinations.").

In the case at bar, the Court concludes that sufficient evidence was present in the record for the ALJ to make a disability determination without a neurological examination regarding Plaintiff's diabetic neuropathy. The record contains ample evidence of Plaintiff's neuropathy and was therefore not ambiguous. At the administrative hearing, Plaintiff testified that she often feels pain in her feet and hands that feels like "somebody's sticking [her] with needles." (Tr. 38). Additionally, neuropathy, numbness, or tingling were noted in Plaintiff's hands and lower extremities by Franklin Primary Health Center on multiple occasions, and she was prescribed 300 mg of Neurontin. (Tr. 189-90, 195-96, 332-33, 353-54). Also, at the request of the Agency, physician Dr. McLaughlin conducted an examination of Plaintiff, and noted her history of hypertension, diabetes and hyperlipidemia. Dr. McLaughlin also observed that Plaintiff was taking Neurontin, which could be for diabetic neuropathy. (Tr. 265). Moreover, Dr. McLaughlin opined that Plaintiff's impairments limited her to occasional carrying/lifting of ten pounds, and occasional walking and standing. In light of this substantial record evidence, the ALJ had the necessary information to determine Plaintiff's impairments, her RFC, and her ability to work, and he did not err by not ordering a consultative neurological examination.

Moreover, "there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development of the record." <u>Graham v. Apfel</u>, 129 F.3d 1420, 1423 (11th Cir. 1997).   In this case, Plaintiff has not shown that she suffered prejudice as a result of the ALJ's failure to order a neurological exam because there is no evidence which demonstrates that the ALJ's decision would have changed if he had ordered a neurological exam. Thus, Plaintiff's claim must fail.

**V.    <u>Conclusion</u>**

For the reasons set forth, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security, denying Plaintiff's claim for supplemental security income, be **AFFIRMED.**

**DONE** this **27**<sup>**TH**</sup> day of **March, 2012.**

**_____/s/ SONJA F. BIVINS_____**
**UNITED STATES MAGISTRATE JUDGE**